Filing # 15025689 Electronically Filed 06/19/2014 04:08:19 PM

**IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT IN AND FOR MONROE COUNTY, FLORIDA**

**NOTE CAPITAL GROUP VENTURES, LLC,**

Plaintiff,

**CASE NO:**

vs.

**WAYNE P. MASSON; CHARLES J. LICIS;** together with any, heirs, devisees, grantees, assignees, creditors, lienors, or trustees of said defendant(s), and all other persons claiming by, through, under or against defendants; **NATIONAL CITY BANK;** and, **ANY UNKNOWN TENANT IN POSSESSION;**

Defendants.

_______________________________________/

## VERIFIED COMPLAINT

Plaintiff, Note Capital Group Ventures, LLC, ("NCGV") by and through its undersigned attorneys, sues Defendants, Wayne P. Masson and Charles J. Licis (collectively, "Borrowers"); together with any heirs, devisees, grantees, assignees, creditors, lienors, or trustees of said defendant(s), and all other persons claiming by, through, under or against defendants; National City Bank ("Bank"); and Any Unknown Tenant in Possession ("Tenant"), and states:

## NATURE OF CLAIM

1. This is an action to: (a) recover damages under a certain promissory note; and (b) foreclose a certain mortgage on real property ("Property") located in Monroe County, Florida.

## JURISDICTION, PARTIES, AND VENUE

2. Jurisdiction is proper because each cause of action contained in this Complaint is an action for foreclosure of real property and the amount in controversy for each count exceeds $15,000.00, exclusive of interest, attorney's fees and costs; and, the real property is located in Monroe County, Florida.

Exhibit "8"

3. The actions and omissions, which are the basis of this lawsuit, took place in Monroe County, Florida.

4. NCGV is, and at all times material hereto was, a foreign limited liability company authorized to conduct business in the state of Florida, as authorized by §607.1501(2)(g), *Fla.Stat.*

5. Wayne P. Masson is, and at all times material hereto was, a *sui juris* resident of the State of Florida, over eighteen (18) years of age, the maker of the debt which is the subject of this lawsuit; and, upon information and belief, resides in Monroe County, Florida.

6. Charles J. Licis is, and at all times material hereto was, a *sui juris* resident of the State of Florida, over eighteen (18) years of age, the maker of the debt which is the subject of this lawsuit; and, upon information and belief, resides in Monroe County, Florida

7. Bank is the holder of that certain mortgage recorded in Official Records Book 2108, Page 725 of the Public Records of Monroe County, Florida.

8. Tenant may represent an unknown tenant of the real property located in Monroe County, Florida.

9. All conditions precedent to the filing of this action have occurred, have been performed, or have otherwise been waived or excused.

## GENERAL ALLEGATIONS

10. On April 15, 2005, Borrowers made, executed, and delivered to Wachovia Mortgage Corporation ("Lender") a promissory note ("Note") in the principal amount of Six Hundred Seventy Thousand and 00/100 dollars ($670,000.00). A true and accurate copy of the Note is attached hereto as **Exhibit "A"**, and the terms and conditions thereof are incorporated herein by reference.

11. Concurrent with the execution and delivery of the Note, and to secure payment and performance of obligations under the Note, on April 15, 2005, Borrowers executed and delivered to Mortgage Electronic Registration Systems, Inc., as nominee for Lender a mortgage ("Mortgage"). The

Mortgage pledged the security of the Property more particularly described therein, which is owned by Borrower.

12. The Mortgage, a true and accurate copy of which is attached hereto as **Exhibit "B"**, was recorded April 19, 2005, in Official Records Book 2105, Page 1474 of the Public Records of Monroe County, Florida.

13. Lender endorsed the Note to Wachovia Bank, N.A. and contemporaneously assigned the Mortgage to Wachovia Bank, N.A. Wachovia Bank, N.A. then transferred the Note via an open endorsement to Newbury Place REO III, LLC and contemporaneously assigned the Mortgage to Newbury Place REO III, LLC. Newbury Place REO III, LLC then transferred the Note and contemporaneously assigned the Mortgage to Newbury Place Ventures III, LLC. Newbury Place Ventures III, LLC then transferred the Note and contemporaneously assigned the Mortgage to Goshen Mortgage LLC. Goshen Mortgage LLC then transferred the Note and assigned the Mortgage to NCGV as evidenced by that certain Assignment of Mortgage, (collectively, "Assignments"). True and correct copies of the Assignments are attached hereto as **Composite Exhibit "C"**.

14. As a result of the forgoing assignments, NCGV owns and holds the Note and Mortgage. Further, as the owner of the Note and the Mortgage, and pursuant to §673.3091, *Fla. Stat,* NCGV is entitled to enforce the Note and the Mortgage.

15. Borrowers came into possession of this Property by virtue of that certain Warranty Deed dated April 15, 2005, and recorded in Official Records Book 2105, Page 1472 of the Public Records of Monroe County, Florida. Upon information and belief, Borrowers remain in possession of the Property.

16. Borrowers defaulted under the terms of the Note and Mortgage by failing to pay the monthly installment payment due November 1, 2010, as required under the terms of the Note and Mortgage, when due and after demand.

17. Borrowers were notified of the foregoing default and has neither paid any sums owing NCGV, nor have responded in any way. A true and correct copy of the notification is attached hereto as

**Exhibit "D"**. By the express terms of the Note and Mortgage, Borrowers remain in default. NCGV has elected to accelerate the terms of the Note and Mortgage.

18. Borrower owes NCGV: (a) $659,029.22 that is due on principal on the Note, plus accrued and unpaid interest, and late fees thereon; (b) all costs and expenses incurred by NCGV in collecting the amounts due to it under the Note, and in protecting its security in the property encumbered by the Mortgage; and, (c) various other amounts that are or may become due under the terms of the Note and Mortgage.

19. By reason of the aforementioned default, NCGV has: (a) been required to secure the services of the undersigned attorneys to endeavor to collect the sums due under the Note and Mortgage and to bring this action, and has agreed to pay those attorneys a reasonable fee for their services and to reimburse them for the costs they incur in connection therewith; and, (b) incurred or will incur expenses for title information, judgment lien searches, and federal tax lien searches in connection with this action. All fees, costs and expenses so paid or incurred constitute additional indebtedness of Borrower to NCGV, the payment of which is secured by the Mortgage.

20. All conditions precedent to the institution and maintenance of this action and to the relief sought herein have been performed or have occurred.

**COUNT I**
**ACTION ON PROMISSORY NOTE**

Plaintiff, NCVG, sues Borrowers and alleges:

21. NCGV re-avers the allegations contained in Paragraphs 1 through 20, *supra*, as if fully set forth herein.

22. This is an action for damages in excess of $15,000.00, exclusive of interest, costs and attorney's fees.

23. Borrowers defaulted under the terms of the Note by failing to pay the monthly installment payment due November 1, 2010, and all subsequent installment payments as required, when due and after demand.

24. Despite the foregoing and written demand, Borrowers have failed to pay any of the outstanding indebtedness to NCGV.

25. As a result of the breach by Borrowers, NCGV has been damaged.

WHEREFORE, Plaintiff, Note Capital Group Ventures, LLC, respectfully requests a judgment against Defendants Wayne P. Masson and Charles J. Licis, for all sums due to Plaintiff under the Note, including, but not limited to, interest, attorney's fees, and costs, and for such other and further relief as the Court may deem appropriate.

**COUNT II**
**ACTION TO FORECLOSE MORTGAGE**

Plaintiff, NCGV, sues Borrowers; Bank; and Tenant; and alleges:

26. NCGV re-avers the allegations contained in Paragraphs 1 through 20, *supra,* as if fully set forth herein.

27. This is an action to foreclose a mortgage on real property located in Monroe County, Florida. The mortgage being foreclosed is more particularly described in Exhibit "B."

28. The property at issue is currently owned by Borrowers.

29. As a result of a default on the Note by Borrowers, the Mortgage is in default.

30. Bank may claim some right, title, or interest in Property by virtue of that certain mortgage recorded in Official Records Book 2108, Page 725 of the Public Records of Monroe County, Florida. Any such claim is junior and inferior to the Mortgage of NCGV.

31. Tenant, whose real name is unknown, may have a claim or demand to the subject property by virtue of possession, whether by tenancy from Borrower, or mere possession only; but any such claim is junior and inferior to the Mortgage of NCGV.

32. Unknown parties claiming by, through, under and against the above-named Defendants who are not known to be dead or alive, whether said unknown parties may claim an interest as spouse, heirs, devisees, grantees, or other claimants of Borrower may be in possession of the subject property and

may claim some right, title or interest in the subject property by virtue thereof. Any such claim is junior and inferior to the Mortgage of NCGV.

33. NCGV states that its lien is superior to any right, title or interest of any unknown spouses, heirs, devisees, grantees, creditors or other legal entities of any such person or entity's estate, their successors and assigns, and other unknown persons or entities claiming by, through and under any of the Defendants.

WHEREFORE, Plaintiff, Note Capital Group Ventures, LLC, respectfully requests this Court take jurisdiction of this action and the parties hereto; enter a judgment determining NCGV' priority position in the subject property; make an accounting of the sums due to NCGV under the Note and Mortgage, including all amounts that have been or may be advanced or incurred by NCGV in collecting the sums due to it under the Note and Mortgage, including, but not limited to, court costs and reasonable attorney's fees; order that if the sums are not paid within the time specified by the Court, that the subject property be sold and the proceeds of such sale be applied toward satisfaction of NCGV's claims; and that the estate and all right, title and interest of each Defendant and Unknown Tenant, and all persons claiming by, through, under or against each party since the filing of the Notice of Lis Pendens herein, be forever barred and foreclosed; and, retain jurisdiction of this cause and parties hereto to grant such other and further relief as is just and equitable under the circumstances.

Dated this 19TH day of June, 2014.

CAMERON H.P. WHITE
Florida Bar No.: 0021343
cwhite@southmilhausen.com
JASON R. HAWKINS
Florida Bar No.: 011925
jhawkins@southmilhausen.com
LINDSEY M. DAVIS
Florida Bar No.: 065711
ldavis@southmilhausen.com
South Milhausen, P.A.
1000 Legion Place, Suite 1200
Orlando, Florida 32801
Telephone: (407) 539-1638
Facsimile: (407) 539-2679
*Attorneys for Plaintiff*

## VERIFICATION

Under penalty of perjury, I declare that I have read the Complaint as filed herein, and the facts alleged are true and correct as of the date the Verified Complaint was filed.

Stephen Vesper
Note Capital Group Ventures, LLC

Print Name: Stephen Vesper

Its: CEO

STATE OF CALIFORNIA
COUNTY OF SAN DIEGO

On ~~May~~ JUNE 3, 2014, before me, KAREN ROCHAMBEAU, NOTARY PUBLIC personally appeared, STEPHEN VESPER, Authorized Signer, of Note Capital Group Ventures, LLC who proved to me on the basis of satisfactory evidence to be the person who's name is subscribed to the within named instrument and acknowledged to me that he executed the same in his/~~her~~ authorized capacity, and that his/~~her~~ signature on the instrument the person, or the entity upon behalf of which the person acted, executed this instrument.

I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

WITNESS my hard and official seal.

Signature: Karen Rochambeau (SEAL)
My commission expires on OCTOBER 2, 2014

OFFICIAL SEAL
KAREN ROCHAMBEAU
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 1906441
SAN DIEGO COUNTY
MY COMM. EXP. OCT. 2, 2014

3916998

# FIXED/ADJUSTABLE RATE NOTE

**(One-Year Treasury Index - Rate Caps)**

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| | | |
|---|---|---|
| April 15, 2005 | KEY WEST | FLORIDA |
| [Date] | [City] | [State] |

17213 Starfish Lane E.
Sugarloaf Key, FL 33042
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 670,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Wachovia Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.875 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on June 01, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 01, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 96001, Charlotte, NC 28296

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 3,963.30. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of May, 2010, and the adjustable interest rate I will pay may change on that day every 12th month thereafter.



Exhibit A

The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and one quarter percentage points ( 2.250%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.875 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.875 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12. **DOCUMENTARY TAX**
The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

(Seal) Wayne P. Masson -Borrower

(Seal) Charles J. Lidis -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
WACHOVIA BANK, NATIONAL ASSOCIATION
WITHOUT RECOURSE
WACHOVIA MORTGAGE CORPORATION
BY: [signature]
Assistant Vice President
KAREN DAVIS

PAY TO THE ORDER OF
WITHOUT RECOURSE
WACHOVIA BANK, NATIONAL ASSOCIATION
BY: [signature]
Assistant Vice President
KAREN DAVIS

3916998

3916998

# INTEREST-ONLY ADDENDUM
## FIXED/ADJUSTABLE RATE NOTE

THIS INTEREST-ONLY ADDENDUM is made this 15th of April, 2005, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") and the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Note to Wachovia Mortgage Corporation (the "Lender").

**Paragraph 3 of the Note is hereby restated as follows:**

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make my monthly payments on the first day of each month beginning on June 01, 2005. I will pay only the interest on the unpaid principal balance of this Note for 60 months. Thereafter, I will pay principal and interest by making payments every month as provided below.

I will make principal and interest payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If on May 01, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make monthly payments at PO Box 96001, Charlotte, NC 28296, or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

My initial interest - only monthly payment will be in the amount of U.S. $ 3,280.21. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note. Notwithstanding any other provision herein, after any partial prepayment is made, the interest-only payment identified above shall be based upon the remaining unpaid principal balance.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_______________________________ (SEAL)
Borrower

_______________________________ (SEAL)
Borrower

ST30066

Return To:
Wachovia Mortgage
Corporation
1100 Corporate Center Drive,
NC4723
Raleigh, NC 27607

This document was prepared by:

Susan Wachs
6451 North Federal Highway,
Suite 500
Fort Lauderdale, FL 33308

Doc# 1510509 04/19/2005 12:31PM
Filed & Recorded in Official Records of
MONROE COUNTY DANNY L. KOLHAGE

INTANGIBLE TAX CL: PW $1,340.00
MORTGAGE DOC STAMP CL: PW $2,345.00

Doc# 1510509
Bk# 2105 Pg# 1474

[Space Above This Line For Recording Data]

# MORTGAGE

MIN 100013700039169980

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated April 15, 2005 , together with all Riders to this document.

(B) "Borrower" is Wayne P. Masson, A SINGLE MAN, Charles J. Licis, A SINGLE MAN

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is Wachovia Mortgage Corporation



Exhibit B

Doc# 1510509
Bk# 2105 Pg# 1475

Lender is a Corporation
organized and existing under the laws of The State of North Carolina
Lender's address is 1100 Corporate Center Drive, Raleigh, NC 27607

(E) "Note" means the promissory note signed by Borrower and dated April 15, 2005. The Note states that Borrower owes Lender Six Hundred Seventy Thousand And Zero/100 Dollars (U.S. $ 670,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 01, 2035.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [X] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

3916998 Initials: ______ 3916998

Doc# 1510509
Bk# 2105 Pg# 1476

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County [Type of Recording Jurisdiction] of Monroe [Name of Recording Jurisdiction]:

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: which currently has the address of
17213 Starfish Lane E. [Street]
Sugarloaf Key [City], Florida 33042 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

3916998 3916998

Initials: ______

Doc# 1510509
Bk# 2105 Pg# 1477

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

Doc# 1510509
Bk# 2105 Pg# 1479

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Doc# 1510509
Bk# 2105 Pg# 1480

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Doc# 1510509
Bk# 2105 Pg# 1481

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Doc# 1510509
Bk# 2105 Pg# 1482

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Doc# 1510509
Bk# 2105 Pg# 1483

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

3916998 3916998

Initials:

Doc# 1510509
Bk# 2105 Pg# 1484

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

Doc# 1510509
Bk# 2105 Pg# 1485

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

Doc# 1510509
Bk# 2105 Pg# 1488

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

______________________ (Seal)
Wayne P. Masson -Borrower

17213 Starfish Lane
E.,Sugarloaf Key, FL 33042 (Address)

______________________ (Seal)
Charles J. Blois -Borrower

17213 Starfish Lane
E.,Sugarloaf Key, FL 33042 (Address)

______________________ (Seal) -Borrower

(Address)

______________________ (Seal) -Borrower

(Address)

______________________ (Seal) -Borrower

(Address)

______________________ (Seal) -Borrower

(Address)

______________________ (Seal) -Borrower

(Address)

______________________ (Seal) -Borrower

(Address)

3916998

3916998

Doc# 1510509
Bk# 2105 Pg# 1489

STATE OF FLORIDA, MONROE County ss:

The foregoing instrument was acknowledged before me this April 15, 2005 by Wayne P. Masson and Charles J. Licis

who is personally known to me or who has produced as identification.

Melissa E Kaiser
Notary Public

MELISSA E. KAISER NOTARY PUBLIC NOTARY SEAL STATE OF MISSOURI

Notary Public Notary Seal State of Missouri

MELISSA E. KAISER
St. Louis City
My Commission Expires
March 23, 2008

Doc# 1510508
Bk# 2105 Pg# 1490

LEGAL DESCRIPTION:

Lot 50, less the Northeast 5 feet (referred to previously as the Southeast 5 feet), Section B, SUGARLOAF SHORES, a subdivision of a part of Government Lot 1, 2, & 3, all in Section 3, Township 67 South, Range 27 East, Sugarloaf Key, according to the Plat thereof, as recorded in Plat Book 2, Page 158, of the Public Records of Monroe County, Florida. Said 5 foot strip being more particular described as follows:
COMMENCE at the intersection of the NE'ly right of way line of Sugarloaf Boulevard with the NW'ly right of way line of Starfish Lane, said point also being the SE'ly corner of the said Lot 50 and run thence NE'ly along the NW'ly right of way line of the said Starfish Lane for a distance of 115.00 feet to the point of beginning; thence continue NE'ly along the NW'ly right of way line of the said Starfish Lane for a distance of 5.00 feet to the E'ly corner of the said Lot 50; thence NW'ly and at right angles along the NE'ly boundary line of the Lot 50 for a distance of 116.07 feet to the N'ly corner of the said Lot 50; then SW'ly and at right angles along the NW'ly boundary line of the said Lot 50 for a distance of 5.00 feet; then SE'ly and at right angles for a distance of 116.07 feet back to the point of beginning.

INIT

Doc# 1510509
Bk# 2105 Pg# 1491

# FIXED/ADJUSTABLE RATE RIDER

**(One-Year Treasury Index - Rate Caps)**

THIS FIXED/ADJUSTABLE RATE RIDER is made this 15th day of April, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to Wachovia Mortgage Corporation

("Lender") of the same date and covering the property described in the Security Instrument and located at:

17213 Starfish Lane E.
Sugarloaf Key, FL 33042
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of 5.875 %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of May, 2010 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

Doc# 1510509
Bk# 2105 Pg# 1492

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and one quarter percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.875 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.875 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

Doc# 1510509
Bk# 2105 Pg# 1493

However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Doc# 1510509
Bk# 2105 Pg# 1494

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal) Wayne P. Masson -Borrower

_____ (Seal) Charles J. Licis -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

Doc# 1510509
Bk# 2105 Pg# 1495

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 15th day of April, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower" whether there are one or more persons undersigned) to secure Borrower's Note to Wachovia Mortgage Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at:

17213 Starfish Lane E.
Sugarloaf Key, FL 33042
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times, and shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person any control over the occupancy or use of the Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

Doc# 1510509
Bk# 2105 Pg# 1496

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

_______________ (Seal)
Wayne P. Masson -Borrower

_______________ (Seal)
Charles J. Licis -Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

3916998

3916998



MONROE COUNTY
OFFICIAL RECORDS

Document drafted and prepared by

*Recorded and return to:*
*Wells Fargo Home Mortgage*
*Attn: Seng Thao/X9998-01L*
*P.O. Box 1629*
*Minneapolis, MN 55440-9790*

MIN: 100013700039169980
Phone: 1-888-679-6377

Doc# 1861798 12/09/2011 4:12PM
Filed & Recorded in Official Records of
MONROE COUNTY DANNY L. KOLHAGE

Doc# 1861798
Bk# 2545 Pg# 1913

(Space above this line for county recorder use only)

**ASSIGNMENT OF MORTGAGE**

For value received, **Mortgage Electronic Registration Systems, Inc., (MERS) as nominee for Wachovia Mortgage Corporation**, its successors and assigns, whose address is PO Box 2026, Flint, MI, 48501-2026, the undersigned hereby grants, assigns, and transfers to:

**Wells Fargo Bank, N.A., successor by merger to Wachovia Bank, N.A.**
1 Home Campus, Des Moines, Iowa 50328

herein "Assignee" its successors and/or assigns, all its right, title, and all beneficial interest under that certain MORTGAGE, herein "Security Instrument" executed by Wayne P. Masson, A SINGLE MAN, Charles J. Licis, A SINGLE MAN, dated April 15, 2005, in the amount of $670,000.00 and given to Mortgage Electronic Registration Systems, Inc., (MERS) as nominee for Wachovia Mortgage Corporation, and recorded on 04/19/2005, as Document or Instrument Number 1510509 and/or in Book 2105, Page 1474, of Official Records in the County Recorder's office of Monroe County, Florida, describing land therein as:

**Property Address:** 17213 Starfish Lane E., Sugarloaf Key, Florida 33042
**Parcel ID #:** **00163690-000000**
**Legal Description:** **See Attached**

Signed this 11/8/11.

Witness: Aveena Mathew

Witness: Matthew Nelson

**Mortgage Electronic Registration Systems, Inc.**

Robert W. Beattie, Assistant Secretary

**FLORIDA ALL PURPOSE NOTARY ACKNOWLEDGEMENT**

STATE OF MINNESOTA }
}
COUNTY OF HENNEPIN }

On this 11/8/2011 before me, Julie Floto, personally appeared Robert W. Beattie, Assistant Secretary, Mortgage Electronic Registration Systems, Inc., ☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

**Notary:** Julie Floto
**My Commission Expires:** 1/31/2016

Julie Floto
Notary Public
Minnesota
My Commission Expires January 31, 2016

Composite Exhibit C

Doc# 1861798
Bk# 2545 Pg# 1914

## Legal Description

**Lot 50, less the Northeast 5 feet (referred to previously as the Southeast 5 feet), Section B, SUGARLOAF SHORES, a subdivision of a part of Government Lot 1, 2, & 3, all in Section 3, Township 67 South, Range 27 East, Sugarloaf Key, according to the Plat thereof, as recorded in Plat Book 2, Page 158, of the Public Records of Monroe County, Florida. Said 5 foot strip being more particular described as follows:**

**COMMENCE at the intersection of the NE'ly right of way line of Sugarloaf Boulevard with the NW'ly right of way line of Starfish Lane, said point also being the SE'ly corner of the said Lot 50 and run thence NE'ly along the NW'ly right of way line of the said Starfish Lane for a distance of 115.00 feet to the point of beginning; thence continue NE'ly along the NW'ly right of way line of the said Starfish Lane for a distance of 5.00 feet to the E'ly corner of the said Lot 50; thence NW'ly and at right angles along the NE'ly boundary line of the Lot 50 for a distance of 116.07 feet to the N'ly corner of the said Lot 50; then SW'ly and at right angles along the NW'ly boundary line of the said Lot 50 for a distance of 5.00 feet; then SE'ly and at right angles for a distance of 116.07 feet back to the point of beginning.**

MONROE COUNTY
OFFICIAL RECORDS

**Return To:**

Doc# 1874877 03/20/2012 11:26AM
Filed & Recorded in Official Records of
MONROE COUNTY DANNY L. KOLHAGE

Doc# 1874877
Bk# 2560 Pg# 1656

[Space Above This Line For Recording Data]

Pool#: WFNPA 2011-06

Loan# 0003916998

## Assignment of MORTGAGE

FOR VALUE RECEIVED, Wells Fargo Bank, N.A., successor by merger to Wachovia Bank, N.A., whose address is 2701 Wells Fargo Way, Minneapolis, MN 55467, hereby sells, assigns, and transfers to:
Newbury Place REO III LLC, 7500 Old Georgetown Rd, Suite 1350 Bethesda, MD 20814
its successors and assigns, all its right, title and interest in and to a certain **MORTGAGE** executed by **WAYNE P. MASSON, A SINGLE MAN, AND CHARLES J. LICIS, A SINGLE MAN** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. ("MERS") ACTING SOLELY AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION**, and bearing the date of **04/15/2005** recorded in the office of the Recorder of **MONROE** County, State of **FLORIDA** in Book **2105** at Page **1474** as Document No. __________ on **04/19/2005**.

Signed this day: 9/8/2011
Effective Date: 9/22/2011

Witness: ____________________
Susan A. Huber

Witness: ____________________
Craig Cole

Wells Fargo Bank, N.A., successor by merger to Wachovia Bank, N.A.

By: ____________________
Name: Edward G. Olson
Title: Vice President Loan Documentation

*STATE OF MINNESOTA}*
*COUNTY OF HENNEPIN} SS.*

*On 9/8/2011, before me, Matthew Joseph Beumer, a Notary Public, personally appeared Edward G. Olson, 2701 Wells Fargo Way, Minneapolis, MN 55467, to me known, who being duly sworn, did say that he is the Vice President Loan Documentation of Wells Fargo Bank, N.A., successor by merger to Wachovia Bank, N.A., and acknowledged to me that he executed the same in his capacity and that said instrument was executed on behalf of said corporation.*

PREPARED BY:
Edward G. Olson (612) 312-9469
Wells Fargo Bank, N.A.
2701 Wells Fargo Way
Minneapolis, MN 55467

Notary Public ____________________

MATTHEW JOSEPH BEUMER
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2012

MONROE COUNTY
OFFICIAL RECORDS

1107995

When recorded mail to:

**ASSIGNMENT OF MORTGAGE / SECURITY DEED / DEED OF TRUST**

Loan No: 219916998

For good and valuable consideration, the sufficiency of which is hereby acknowledged, the undersigned, Newbury Place REO III, LLC, whose address is 7500 Old Georgetown Road, Suite 1300, Bethesda, MD 20814, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described mortgage / security deed / deed of trust together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to Newbury Place Ventures III, LLC, whose address is 7500 Old Georgetown Road, Suite 1300, Bethesda, MD 20814, its successors or assigns, (ASSIGNEE).

Said mortgage / security deed / deed of trust dated 4/15/2005 in the amount of $670,000.00 executed by WAYNE P MASSON and CHARLES J LICIS to MERS AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION and recorded on 4/19/2005 as Instrument # 1510509 in the office of the Recorder of MONROE County, FL.

PROPERTY ADDRESS: 17213 STARFISH LANE E, SUGARLOAF KEY, FL 33042
LEGAL DESCRIPTION: See Attached Exhibit A

In testimony whereof, the said company has caused this instrument to be executed on this 3rd day of September, 2013.

Newbury Place REO III, LLC

| | |
|---|---|
| By: ______________ | By: ______________ |
| Name: Michael Niccolini | Name: Steven Trowern |
| Its: Vice President | Its: Vice President |
| Witness: ______________ | Witness: ______________ |
| Name: Sam Barton | Name: Tanya Dooley |

Prepared by: Jamie Mertz
7500 Old Georgetown Road, Suite 1300
Bethesda, MD 20814

Loan No: 219916998

State of Maryland )ss.:

County of Montgomery )

On this 3rd day of September, 2013, before me, personally appeared Michael Niccolini and Steven Trowern, personally known to me, or proved to me on the basis of satisfactory evidence, to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument and such individual made such appearance before the undersigned in the State of Maryland, County of Montgomery.

Notary: ______________________

Name: Benjamin Aaron Sislen

Expires: 3/31/2015

When recorded mail to:

## ASSIGNMENT OF MORTGAGE / SECURITY DEED / DEED OF TRUST

Loan No: 219916998

For good and valuable consideration, the sufficiency of which is hereby acknowledged, the undersigned, Newbury Place Ventures III, LLC, whose address is 7500 Old Georgetown Road, Suite 1300, Bethesda, MD 20814, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described mortgage / security deed / deed of trust together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to Goshen Mortgage LLC whose address is 411 Putnam Ave Greenwich, CT 06830 its successors or assigns, (ASSIGNEE).

Said mortgage / security deed / deed of trust dated 4/15/2005 in the amount of $670,000.00 executed by WAYNE P MASSON and CHARLES J LICIS to MERS AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION and recorded on 4/19/2005 as Instrument # 1510509 in the office of the Recorder of MONROE County, FL.

PROPERTY ADDRESS: 17213 STARFISH LANE E, SUGARLOAF KEY, FL 33042
LEGAL DESCRIPTION: See Attached Exhibit A

In testimony whereof, the said company has caused this instrument to be executed on this 3rd day of September, 2013.

Newbury Place Ventures III, LLC

By: ______________________
Name: Michael Niccolini
Its: Vice President

By: ______________________
Name: Steven Trowern
Its: Vice President

Witness: ______________________
Name: Sam Barton

Witness: ______________________
Name: Tanya Dooley

Prepared by: Jamie Mertz
7500 Old Georgetown Road, Suite 1300
Bethesda, MD 20814

Loan No: 219916998

State of Maryland )ss.:

County of Montgomery )

On this 3rd day of September, 2013, before me, personally appeared Michael Niccolini and Steven Trowern, personally known to me, or proved to me on the basis of satisfactory evidence, to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument and such individual made such appearance before the undersigned in the State of Maryland, County of Montgomery.

Notary: ______________________

Name: Benjamin Aaron Sislen

Expires: 3/21/2015

Prepared by McCalla Raymer, LLC
Record &Return to 225 E. Robinson St. Suite 660
Parcel ID 00163600-000000 Orlando, FL 32801

## ASSIGNMENT OF MORTGAGE
## KNOW ALL MEN BY THESE PRESENTS:

That **GOSHEN MORTGAGE, LLC**, party of the first part, in consideration of the sum of $10.00 and other valuable considerations, received from or on behalf of **GDBT I TRUST 2011-1**, party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto the said party of the second part a certain mortgage bearing the date of 4/15/2005, executed by Wayne P. Masson, a single man and Charles J. Licis, a single man, recorded in Monroe County, Florida in Official Record Book 2105, Page 1474, on 04/19/2005, in the amount of $670,000.00, encumbering the property more particularly described as follows:

> LOT 50, LESS THE NORTHEAST 5 FEET (REFERRED TO PREVIOUSLY AS THE SOUTHEAST 5 FEET), SECTION B, SUGARLOAF SHORES, A SUBDIVISION OF A PART OF GOVERNMENT LOT 1, 2 & 3, ALL IN SECTION 3, TOWNSHIP 67 SOUTH, RANGE 27 EAST, SUGARLOAF KEY, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 2, PAGE 158 OF THE PUBLIC RECORDS OF MONROE COUNTY, FLORIDA. SAID 5 FOOT STRIP BEING MORE PARTICULAR DESCRIBED AS FOLLOWS: COMMENCE AT THE INTERSECTION OF THE NE'LY RIGHT OF WAY LINE OF SUGARLOAF BOULEVARD WITH THE NW'LY RIGHT OF WAY LINE OF STARFISH LANE, SAID POINT ALSO BEING THE SE'LY CORNER OF THE SAID LOT 50 AND RUN THENCE NE'LY ALONG THE NW'LY RIGHT OF WAY LINE OF THE SAID STARFISH LANE FOR A DISTANCE OF 115.00 FEET TO THE POINT OF BEGINNING; THENCE CONTINUE NE'LY ALONG THE NW'LY RIGHT OF WAY LINE OF THE SAID STARFISH LANE FOR A DISTANCE OF 5.00 FEET TO THE E'LY CORNER OF THE SAID LOT 50; THENCE NW'LY AND AT RIGHT ANGLES ALONG THE NE'LY BOUNDARY LINE OF THE LOT 50 FOR A DISTANCE OF 116.07 FEET TO THE N'LY CORNER OF THE SAID LOT 50; THEN SW'LY AND AT RIGHT ANGLES ALONG THE NW'LY BOUNDARY LINE OF THE SAID LOT 50 FOR A DISTANCE OF 5.00 FEET; THEN SE'LY AND AT RIGHT ANGLES FOR A DISTANCE OF 116.07 FEET BACK TO THE POINT OF BEGINNING.

**TO HAVE AND TO HOLD** the same unto the said assignee, its successors and assigns forever, but without recourse on the undersigned.

*In Witness Whereof,* the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed, this 6 day of [illegible], 2013.

Witnesses: Assignor(s)

Witness: [signature]

Print Name: Robert F Mackey

GRANTOR

[signature]

By: Carlos De Jesus
Its: Vice President of Servicing

Corporate Seal:

STATE OF IL

COUNTY OF Cook

**BEFORE ME**, the undersigned authority, personally appeared Carlos De Jesus as Servicing VP of Fay Servicing, LLC, attorney-in-fact for of **GOSHEN MORTGAGE, LLC**, a corporation organized and existing under and by virtue of the laws of the United States of America, named as party of the first part in the foregoing instrument, after first having been duly authorized by **GOSHEN MORTGAGE, LLC** to do so.

**WITNESS** my hand and official seal in the County and State last aforesaid this 10 day of NOV, 2013.

[signature]
NOTARY PUBLIC
My Commission Expires: 3/30/2016

Official Seal
Richard Riddle
Notary Public State of Illinois
My Commission Expires 03/30/2016

2076086 11-07995-2

Recording Requested By:

When Recorded Return To:

---

**ASSIGNMENT OF MORTGAGE**

Date of Assignment: 2/28, 2014

For Valuable Consideration, the undersigned, **GOSHEN MORTGAGE, LLC, 411 WEST PUTNAM AVENUE, SUITE 125, GREENWICH, CT 06830 (Assignor)** by these presents does assign and set over, without recourse, to **NOTE CAPITAL GROUP VENTURES, LLC, 668 EL CAMINO REAL, SUITE 104-510, CARLSBAD, CA 92009 (Assignee)** the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by **WAYNE P. MASSON, A SINGLE MAN AND CHARLES J. LICIS, A SINGLE MAN**, to MORTGAGE ELECTRONIC REGISTRATON SYSTEMS ("MERS") AS NOMINEE FOR WACHOVIA MORTGAGE CORPORATION ITS SUCCESSORS AND ASSIGNS. Said mortgage Dated **4/15/2005** is recorded in the State of Florida, County of Monroe on 4/19/2005, Book 2105, Page 1474, Instrument 1510509. Amount **$670,000.00**

Property Address: **17213 STARFISH LANE E, SUGAR KEY, FL 33042**

This assignment is made without representation, guaranty or warranty, expressed or implied by the assignor, its employees, agents or attorneys and is without recourse.

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed as a sealed instrument by its proper officer.

Executed on: 2/28/14

Goshen Mortgage LLC

By: [signature]

William J. Bymel, Authorized Signer

State Of Florida

County Of Palm Beach

ON February 28, 2014, BEFORE ME, TERRI BIGGS, A NOTARY PUBLIC IN AND FOR SAID STATE, PERSONALLY APPEARED **WILLIAM J. BYMEL**, PERSONALLY KNOWN TO ME (OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE DULY AUTHORIZED PERSON WHO EXECUTED THE WITHIN INSTRUMENT ON BEHALF OF THE CORPORATION, AND ACKNOWLEDGED TO ME THAT SUCH MANAGER EXECUTED THE WITHIN INSTRUMENT PURSUANT TO ITS BY-LAWS OR A RESOLUTION OF ITS BOARD OF DIRECTORS.

WITNESS my hand and official seal,

[signature] Terri A Biggs

Terri A Biggs

TERRI A BIGGS
MY COMMISSION # EE831137
EXPIRES August 29, 2016
(407) 398-0153 FloridaNotaryService.com

Prepared By: William J. Bymel, Goshen Mortgage, LLC, 411 West Putnam Avenue, Suite 125, Greenwich, Ct 06830

South Milhausen
A PROFESSIONAL ASSOCIATION

Gateway Center
1000 Legion Place • Suite 1200
Orlando, FL 32801
Tel 407 539 1638
Fax 407 539 2679
www.southmilhausen.com

Jeffrey Milhausen
J. Todd South
Richard D. Baxter †
John Christensen
Sherry Lambson-Eisele
Jason Hawkins
Marlene Kirtland
Derek A. Kurtz *
James R. Lavigne
F. Lee Morrison
William O'Neal ††
David H. Popper **
J. Carlos Real †
Scott R. Rost *
Scott South
James Vanderwoud
Cameron H. P. White

*BOARD CERTIFIED BY THE FLORIDA BAR IN BUSINESS LITIGATION
**OF COUNSEL
†ALSO ADMITTED IN NEW YORK
††ADMITTED IN ARIZONA

April 24, 2014

***Via FedEx and First Class Mail***

Charles J. Licis
1721 Starfish Lane E
Sugarloaf Key, FL 33042

*RE: NOTICE OF INTENT TO ACCELERATE / NOTICE OF DEFAULT*
*Creditor: Note Capital Group Ventures, LLC*
*Property Address: 1721 Starfish Lane E., Sugarloaf Key, FL 33042 (the "Property")*
*Loan No.: 9900043244*

Dear Mr. Licis:

Please be advised that South Milhausen, P.A. represents Note Capital Group Ventures, LLC ("NCGV") in connection with (i) that certain promissory note ("Note") executed by Wayne P. Masson and Charles J. Licis ("You") dated April 15, 2005, with Wachovia Mortgage Corporation ("Lender"), in the principal amount of Six Hundred Seventy Thousand and 00/100 Dollars ($670,000.00) ("Note"); and (ii) that certain mortgage ("Mortgage") executed by You and Wayne P. Masson to Mortgage Electronic Registration Systems, Inc., as nominee for Lender and Lender's successors and assigns, dated April 15, 2005; (hereinafter, items (i) and (ii) are collectively referred to as the "Loan Documents"). As You know, the Mortgage was recorded in Official Records Book 2105, Page 1474 of the Public Records of Monroe County, Florida and provided security for the Note by encumbering that certain real property more particularly identified in Exhibit "A" to the Mortgage. The Loan Documents were later assigned to NCGV via an Assignment of Mortgage (the "Assignment").

All capitalized terms used but not otherwise defined herein shall have the meaning attributed to them in the Loan Documents.

In addition to previous notices you have received from the Lender, its agents, successors and assigns, this letter shall serve as further and final notice that you are in default under the Loan Documents for failure to timely pay the amounts due and for other events of default. Specifically, You and Wayne P. Masson are in default under the terms of the Loan Documents for failing to make the monthly installment payment that was due November 1, 2010, and all subsequent payments.

In order to cure the default, You and Wayne P. Masson must bring the account current. The amount necessary to cure the default, as of May 26, 2014 (the "Cure Amount") is One Hundred Fifty-Three Thousand Two Hundred Thirty-Seven and 57/100 Dollars ($153,237.57). You may contact the undersigned immediately for an updated figure.

You and Wayne P. Masson may forestall the Lender from taking legal action to recover all sums due and owing under the Loan Documents by tendering full payment of the Cure Amount in certified

Exhibit D

(SEE NEXT PAGE FOR IMPORTANT INFORMATION)

funds or via a wire transfer to this Firm's trust account within thirty (30) days from the date of this letter, or no later than May 26, 2014.

Failure to pay the Cure Amount on or before May 26, 2014, may result in acceleration of the sums secured by the Mortgage and the Note, foreclosure by judicial proceeding, and sale of the Property.

You and Wayne P. Masson shall have the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense You and/or Wayne P. Masson may have to acceleration and foreclosure. If the default is not cured by May 26, 2014, NCGV, at its option, may require immediate payment in full of all sums secured by the Mortgage without further demand and may foreclose the Mortgage by judicial proceeding.

The foregoing does not constitute a complete listing of all defaults under the Loan Documents or a waiver of any term, provision, condition, covenant, or agreement contained in any of the Loan Documents. Moreover, the foregoing does not (i) operate as a waiver of any right, power, or privilege thereunder; (ii) prejudice or preclude any other or further exercise of any right or remedy provided by law or equity; (iii) entitle You and/or Wayne P. Masson to any other or further notice or demand whatsoever; or (iv) in any way modify, change, impair, affect, diminish, or release any liability of You and/or Wayne P. Masson, as borrowers, may have under or pursuant to any of the Loan Documents. All rights and remedies available to NCGV are cumulative and may be pursued separately, successively, or concurrently against You and/or Wayne P. Masson, the Mortgaged Property, or any guarantor, person or entity that is or may become liable for all or any portion of the indebtedness, without further notice to any other person or entity.

Pursuant to Section 1692(g) of Title 15 of the United States Code, you are hereby informed that this communication is an attempt to collect a debt. Any information obtained by Note Capital Group Ventures, LLC and/or the undersigned will be used for that purpose. The original creditor's name is Wachovia Mortgage Corporation, whose address is 1100 Corporate Center Drive, Raleigh, NC and later assigned to Note Capital Group Ventures, LLC. The principal amount of the Note, which will be outstanding as of May 26, 2014, 2014, will be $659,029.22, excluding interest, late fees, and attorneys' fees and costs and other fees which may accrue after the date of this letter. The complete name of the creditor to whom the debt is currently owed is Note Capital Group Ventures, LLC, 7668 El Camino Real, Suite 104-510, Carlsbad, CA 92009.

Unless you dispute the validity of the debt, or any portion of the debt, within thirty (30) days from receipt of this notice, the debt will be assumed to be valid. If you notify us, in writing, within thirty (30) days from receipt of this notice that the debt is disputed, or a portion thereof, we will mail you verification of the debt or of the judgment if a judgment has been entered.

If you are under the protection of the U.S. Bankruptcy Code, this is NOT a demand for payment and this letter is provided for informational purposes only.

(SEE NEXT PAGE FOR IMPORTANT INFORMATION)

Note Capital Group Ventures, LLC does not offer home ownership counseling services to borrowers. Such counseling is available through a variety of non-profit organizations experienced in homeownership counseling and is approved by the Secretary of Housing and Urban Development. A listing of such organizations may be obtained by calling (800) 569-4287.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Very Truly Yours,

Cameron H.P. White

CHPW/

cc: Client
Wayne P. Masson

S M

South Milhausen

A PROFESSIONAL ASSOCIATION

Gateway Center
1000 Legion Place • Suite 1200
Orlando, FL 32801

*Tel* 407 539 1638
*Fax* 407 539 2679

www.southmilhausen.com

Jeffrey Milhausen
J. Todd South
Richard D. Baxter *†
John Christensen
Sherry Lambson-Eisele
Jason Hawkins
Marlene Kirtland
Derek A. Kurtz **
James R. Lavigne
F. Lee Morrison
William O'Neal *†
David H. Popper **
J. Carlos Real †
Scott R. Rost *
Scott South
James Vanderwoud
Cameron H. P. White

*BOARD CERTIFIED BY THE FLORIDA BAR IN BUSINESS LITIGATION
**OF COUNSEL
†ALSO ADMITTED IN NEW YORK
††ADMITTED IN ARIZONA

April 24, 2014

***Via FedEx and First Class Mail***

Wayne P. Masson
1721 Starfish Lane E
Sugarloaf Key, FL 33042

*RE:* *NOTICE OF INTENT TO ACCELERATE / NOTICE OF DEFAULT*
*Creditor: Note Capital Group Ventures, LLC*
*Property Address: 1721 Starfish Lane E., Sugarloaf Key, FL 33042 (the "Property")*
*Loan No.: 9900043244*

Dear Mr. Masson:

Please be advised that South Milhausen, P.A. represents Note Capital Group Ventures, LLC ("NCGVV") in connection with (i) that certain promissory note ("Note") executed by Wayne P. Masson ("You") and Charles J. Licis dated April 15, 2005, with Wachovia Mortgage Corporation ("Lender"), in the principal amount of Six Hundred Seventy Thousand and 00/100 Dollars ($670,000.00) ("Note"); and (ii) that certain mortgage ("Mortgage") executed by You and Charles J. Licis to Mortgage Electronic Registration Systems, Inc., as nominee for Lender and Lender's successors and assigns, dated April 15, 2005; (hereinafter, items (i) and (ii) are collectively referred to as the "Loan Documents"). As You know, the Mortgage was recorded in Official Records Book 2105, Page 1474 of the Public Records of Monroe County, Florida and provided security for the Note by encumbering that certain real property more particularly identified in Exhibit "A" to the Mortgage. The Loan Documents were later assigned to NCGV via an Assignment of Mortgage (the "Assignment").

All capitalized terms used but not otherwise defined herein shall have the meaning attributed to them in the Loan Documents.

In addition to previous notices you have received from the Lender, its agents, successors and assigns, this letter shall serve as further and final notice that you are in default under the Loan Documents for failure to timely pay the amounts due and for other events of default. Specifically, You and Charles J. Licis are in default under the terms of the Loan Documents for failing to make the monthly installment payment that was due November 1, 2010, and all subsequent payments.

In order to cure the default, You and Charles J. Licis must bring the account current. The amount necessary to cure the default, as of May 26, 2014 (the "Cure Amount") is One Hundred Fifty-Three Thousand Two Hundred Thirty-Seven and 57/100 Dollars ($153,237.57). You may contact the undersigned immediately for an updated figure.

You and Charles J. Licis may forestall the Lender from taking legal action to recover all sums due and owing under the Loan Documents by tendering full payment of the Cure Amount in certified funds or

(SEE NEXT PAGE FOR IMPORTANT INFORMATION)

via a wire transfer to this Firm's trust account within thirty (30) days from the date of this letter, or no later than May 26, 2014.

Failure to pay the Cure Amount on or before May 26, 2014, may result in acceleration of the sums secured by the Mortgage and the Note, foreclosure by judicial proceeding, and sale of the Property.

You and Charles J. Licis shall have the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense You and/or Charles J. Licis may have to acceleration and foreclosure. If the default is not cured by May 26, 2014, NCGV, at its option, may require immediate payment in full of all sums secured by the Mortgage without further demand and may foreclose the Mortgage by judicial proceeding.

The foregoing does not constitute a complete listing of all defaults under the Loan Documents or a waiver of any term, provision, condition, covenant, or agreement contained in any of the Loan Documents. Moreover, the foregoing does not (i) operate as a waiver of any right, power, or privilege thereunder; (ii) prejudice or preclude any other or further exercise of any right or remedy provided by law or equity; (iii) entitle You and/or Charles J. Licis to any other or further notice or demand whatsoever; or (iv) in any way modify, change, impair, affect, diminish, or release any liability of You and/or Charles J. Licis, as borrowers, may have under or pursuant to any of the Loan Documents. All rights and remedies available to NCGV are cumulative and may be pursued separately, successively, or concurrently against You and/or Charles J. Licis, the Mortgaged Property, or any guarantor, person or entity that is or may become liable for all or any portion of the indebtedness, without further notice to any other person or entity.

Pursuant to Section 1692(g) of Title 15 of the United States Code, you are hereby informed that this communication is an attempt to collect a debt. Any information obtained by Note Capital Group Ventures, LLC and/or the undersigned will be used for that purpose. The original creditor's name is Wachovia Mortgage Corporation, whose address is 1100 Corporate Center Drive, Raleigh, NC and later assigned to Note Capital Group Ventures, LLC. The principal amount of the Note, which will be outstanding as of May 26, 2014, 2014, will be $659,029.22, excluding interest, late fees, and attorneys' fees and costs and other fees which may accrue after the date of this letter. The complete name of the creditor to whom the debt is currently owed is Note Capital Group Ventures, LLC, 7668 El Camino Real, Suite 104-510, Carlsbad, CA 92009.

Unless you dispute the validity of the debt, or any portion of the debt, within thirty (30) days from receipt of this notice, the debt will be assumed to be valid. If you notify us, in writing, within thirty (30) days from receipt of this notice that the debt is disputed, or a portion thereof, we will mail you verification of the debt or of the judgment if a judgment has been entered.

If you are under the protection of the U.S. Bankruptcy Code, this is NOT a demand for payment and this letter is provided for informational purposes only.

(SEE NEXT PAGE FOR IMPORTANT INFORMATION)

Note Capital Group Ventures, LLC does not offer home ownership counseling services to borrowers. Such counseling is available through a variety of non-profit organizations experienced in homeownership counseling and is approved by the Secretary of Housing and Urban Development. A listing of such organizations may be obtained by calling (800) 569-4287.

PLEASE GOVERN YOURSELF ACCORDINGLY.

Very Truly Yours,

Cameron H.P. White

CHPW/

cc: Client
Charles J. Licis